## MARSHALL *vs.* MASHALL'S EXECUTOR.

[FINAL SETTLEMENT OF EXECUTOR'S ACCOUNTS.]

1. *The giving of a note, no payment of pre-existing debt.*—A note given for a pre-existing debt is no payment of such debt, unless it was so agreed between the parties, and the taking of such a note does not even raise the presumption of payment.

2. *Damages; measure of, in actions upon contracts payable in Confederate money.*—The measure of damages, in actions upon contracts, where the agreement or understanding was, that they were to be discharged by a payment in Confederate currency or treasury-notes, is the value of such currency or treasury-notes at the time the contract was due.

3. *Parol evidence, under ordinance No. 26.*—To ascertain and carry into effect the intention of the parties to contracts, coming within the influence of ordinance No. 26, (1865,) "the real and true value of the consideration may be proved," together with the nature of the contract, and the surrounding circumstances, existing at the time of its execution.

APPEAL from the Probate Court of Monroe.

IN the matter of the estate of Joseph B. Marshall, deceased; John L. Marshall, the appellee, was the executor of the last will and testament of said Joseph B. Marshall, which will was admitted to probate in the probate court of Monroe county, on the 2nd January, 1865. On the 25th November, 1867, said executor appeared in the probate court and made a final settlement of his administration as executor of said estate. Wm. F. Marshall and Sarah J. Marshall, heirs and legatees of said Joseph B. Marshall, appeared and contested said settlement. The only question

raised in the case, in this court, was whether the note for $2,957, made by the executor, dated the 15th August, 1863, and payable one day after date, to Joseph B. Marshall, was to be scaled to the value of Confederate money at the time it was payable. The facts on this question will sufficiently appear from reading the opinion of the court.

J. HENDERSON, for appellants.
R. C. TORREY, contra.

JUDGE, J.—The probate judge attained the conclusion, from the evidence, that the note of appellee to Joseph B. Marshall, for two thousand nine hundred and fifty-seven dollars, dated August 15th, 1863, and due one day after date, was given with the understanding between the parties at the time of its execution, that it should be discharged by a payment in Confederate currency or treasury notes; and, consequently, charged the executor, not with the full amount of said note, but with the value of the amount thereof in Confederate money, estimating such value as of the date of the note.

The question for our determination is, whether, under the evidence, this action of the probate court was correct. We think it sufficiently appears from the evidence, all of which is set out in the record, that the note in question was not based on any original contract entered into between the parties at the time of its execution; but that the note was given on account of pre-existing debts, due by the appellee to Joseph B. Marshall. The former had been the guardian of the latter, and the ward became of age on the 19th of June, 1860. On the 21st of the same month and year, the parties had a settlement, by which it appears, that appellee, on account of his guardianship, was then indebted to Joseph B. Marshall, in the sum of two thousand four hundred and one 50-100 dollars, for which sum he executed to Joseph B. Marshall his promissory note of that date; whereupon the latter executed to the former his receipt, which is as follows:

" Received of John L. Marshall, his note of this date for the above amount of twenty-four hundred and one dollars

and fifty cents, it being in full of all claims against him as guardian, this 21st June, 1860."

   (Signed,)                   JOSEPH B. MARSHALL.

It seems that after this settlement had been made, appellee became further indebted to Joseph B. Marshall for negro hire ; for on the 15th of August, 1863, the latter executed to the former, a receipt which is as follows :

"$350—Received of John L. Marshall, three hundred and fifty dollars, it being for the hire of my negroes for the year 1862 ; 15thAugust, 1863."

   (Signed,)                   J. B. MARSHALL.

The amount of this receipt, and the amount of the note and interest for $2,401 50, given on the settlement of the guardianship accounts, when added together, make an aggregate amount, not very materially variant from the amount of the note for $2,957 00 ; and they doubtless constituted the sole consideration of the last mentioned note. And this conclusion is strengthened by the further facts, that the note for $2,957 00 bears even date with the receipt for $350 00, and that the note for $2,957 00, purports on its face to be given " *on settlement up to that date.*"

Such being the only legitimate conclusion that can be drawn from the evidence, what should have been the action of the probate court in the premises ?

The note for $2,957 00 was not *payment* of the pre-existing debts for which it was given, unless there was an agreement to receive it as payment ; and the taking of said note did not even raise the presumption of such payment.— *Mooring v. Mobile Marine Dock & Mutual Insurance Co.*, 27 Ala. 254.

There was no evidence whatever of any agreement of the character named, and it follows that the action of the probate court, in relation to the matter under consideration, was erroneous. The executor should have been charged, under the evidence, with the amount of the note for $2,401 50, and interest thereon.—Ordinance No. 26, of the Convention, Revised Code, p. 58, "to ratify certain acts, judgments, and other proceedings therein mentioned," had no application to this note, which was executed before Confederate currency was known ; and if the executor had

desired it, the next inquiry should have been, whether the account of $350 00, for nego hire, was contracted with the understanding or agreement that it should be discharged by a payment in Confederate currency or treasury-notes. If it was, then the execution should have been charged with the value of that amount of such treasury-notes, at the time the account was due. We have held, after mature consideration, such to be the proper measure of damages in actions upon such contracts.—*Kirtland v. Moulton*, decided at the present term. The ordinance of the convention before cited, has opened wide the door for the introduction of parol evidence in suits upon contracts alleged to be of this character, even though the contract be in writing. "In the construction of all contracts the cardinal rule is, to effectuate, if possible, the intention of the parties."—See cases cited in Shepherd's Digest, p. 497, §§ 124, 125. And to this end, not only the time, and place, and manner of performance should be looked to, but the court should, if necessary, also "look to the *subject-matter* of the contract, the *situation* of the parties, the *motives* that led to it, and the *object* intended to be attained by it."—*Watts v. Shepherd*, 2 Ala. 425 ; *Ely v. Witherspoon*, ib. 131 ; *Huffman v. The State*, 29 Ala. 40. To ascertain, and carry into effect, the intention of the parties to contracts coming within the influence of the ordinance before cited, " the real and true value of the consideration may be proved," together with the nature of the contract, and the surrounding circumstances existing at the time of its execution.

It results that the decree of the probate court must be reversed and the cause remanded.