[McDonnell v. Alabama Gold Life Insurance Co.]

| 85 | 401 |
| 93 | 114 |
| 85 | 401 |
| 97 | 193 |
| 97 | 267 |
| 85 | 401 |
| 98 | 122 |
| 98 | 168 |
| 85 | 401 |
| 101 | 44 |
| 85 | 401 |
| 128 | 658 |

# McDonnell *v.* Alabama Gold Life Insurance Co.

*Bill in Equity by Policy-Holders, against Stockholders of Dissolved Insurance Company.*

1. *Liability of stockholders to creditors of dissolved corporation.*—Under the constitutional and statutory provisions which were of force in 1870 (Const. 1868, Art. XIII, §§ 2, 3: Code, 1867, § 1760), the stockholders of a private corporation were liable to its creditors, not for the amount of their unpaid subscriptions for stock, but for an additional sum equal to the amount of their stock; and this liability may be enforced, on the dissolution the corporation, by bill in equity for the benefit of all the creditors.

2. *Same.*—This liability of the stockholders is not limited to judgment creditors who have exhausted their legal remedies, but equally extends to creditors who have no lien, or whose debts are evidenced by simple contract only.

3. *Policy-holders as creditors of insurance company.*—On the dissolution of a life-insurance company, the holders of policies issued by it are creditors, and their claims are debts or dues of the corporation, within the meaning of these constitutional and statutory provisions; the damages they are entitled to recover being liquidated, and measured by the equitable (or surrender) value of the policies, calculated on the basis of the *American Tables of Mortality*, of which the courts take judicial notice.

4-5. *General assignment operating dissolution of corporation; when action accrues to creditors; statute of limitations.*—A right of action, to enforce this personal liability of the stockholders, accrues to creditors on the dissolution of the corporation; such dissolution being effected, for this purpose, by the execution of a general assignment for the benefit of its creditors, followed by a complete abandonment of its business; and the statute of limitations in favor of the stockholders, as against a suit by creditors, begins to run from the date of such assignment.

6. *Estoppel against stockholders, as to organization of corporation.* The stockholders of a dissolved private corporation, which carried on its business for eighteen years without interruption, when sued by creditors seeking to enforce a personal liability against them under constitutional and statutory provisions, are estopped from denying the regularity of its organization as a corporation, or assailing the constitutionality of the law under which it was organized.

7. *Repeal of statute, as affecting liability of stockholders.*—As to the personal liability of stockholders for debts of the corporation contracted while the constitutional and statutory provisions of 1868 were in force, the Supreme Court of the United States has decided (*Hawthorne v. Calef*, 2 Wall. 10) that it is neither taken away nor impaired by the subsequent repeal and abrogation of those provisions; and this decision is not only supported by the great current of judicial authority, but is conclusive on this court.

8. *Paid-up policy, as novation, or continuation of original policy.* A paid-up policy, issued in compliance with conditions and stipulations contained in the original policy, is not a novation, or substitution of a

26

[McDonnell v. Alabama Gold Life Insurance Co.]

new contract, but merely a modification and continuation of the contract evidenced by the original policy; and the personal liability of the stockholders to the holders of such paid-up policies is not affected by the repeal of the constitutional and statutory provisions which were of force when the original policy was issued, but which were repealed and abrogated before the issue of the paid-up policy.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 15th October, 1886, by Mrs. Kate McDonnell and others, holders of policies issued by the Alabama Gold Life Insurance Company, against the said corporation, certain stockholders of the corporation, and A. P. Bush, as trustee under a general assignment executed to him by the corporation, on the 8th October, 1886, in trust for the benefit of its creditors; and sought, principally, to enforce against the stockholders a personal liability for the complainants' debts against the corporation, and the debts of all other policy-holders who might come in and make themselves parties as complainants. The said corporation was organized, under the general statutes, in 1868, and carried on the business of life insurance, having its principal office in the city of Mobile, until October 8th, 1886, when it made the assignment of all its assets to A. P. Bush, in trust for its creditors generally. The bill alleged that the debts due to the complainants "were each contracted by said corporation prior to December 5th, 1875;" that the corporation "has wholly abandoned, since October 8th, 1886, the business for which it was organized, and has become and is utterly insolvent and unable to pay its debts." The policy held by Mrs. McDonnell was on the life of her husband, James McDonnell, who was living when the bill was filed, but died during the suit. The original policy, No. 881, was issued on the 23d February, 1870; but on the 22d February, 1882, this policy was surrendered, and a "paid-up policy," as it is called, was issued in lieu of it. The other complainants held policies on the lives of persons still living, issued prior to December 5th, 1875.

A demurrer to the bill was filed by the stockholders and the trustee jointly, assigning as grounds of demurrer, in substance—1st, that the bill does not show any indebtedness from the corporation to the several complainants, as holders of policies on the lives of persons who are still living; 2d, that the complainants, if creditors at all, are not judgment creditors, have not exhausted their legal remedies, and have

[McDonnell v. Alabama Gold Life Insurance Co.]

no standing in a court of equity; 3d, that the bill does not state any facts which show a legal dissolution of said corporation; 4th, that the complainants' several claims are barred by the statute of limitations of six years; 5th, that the paid-up policy held by Mrs. McDonnell, and any other paid-up policies held by persons who might come in as complainants, were issued after December 5th, 1875, and, under the laws in force at the time they were issued, did not impose any personal liability on the stockholders, beyond the amount due and unpaid on their several subscriptions of stock.    The chancellor overruled the demurrer on all the grounds assigned, except as to the paid-up policy held by Mrs. McDonnell; as to which policy, and others similarly situated, he held that the paid-up policy was a new contract, and that the personal liability of the stockholders must be determined by the constitutional and statutory provisions in force when they were issued.

Mrs. McDonnell appeals from this decree, and here assigns it as error.    By consent, the defendants make cross-assignments of error, based on the overruling of their demurrers on all the grounds specially assigned.

J. L. & G. L. SMITH, for Mrs. McDonnell *et al.*, complainants below, submitted printed arguments, in which they made the following points, and cited the following authorities:—1. The paid-up policies were issued under and in accordance with the stipulations of the original policies. They are in law not a new contract (*novatio*), or substitution of one contract for another, by which the first is extinguished; but simply a modification of the original contract.—2 Chitty on Contracts, 1371, 11 Amer. ed.; 1 Parsons on Contracts, 217–9, mar.; *Ala. Gold Life Insurance Co. v. Thomas*, 74 Ala. 581; *Mooring v. M. D. & M. Insurance Co.*, 27 Ala. 258; *Scott v. Myatts & Moore*, 24 Ala. 494; *Abercrombie v. Moseley*, 9 Porter, 150; *Marshall v. Marshall*, 42 Ala. 151; *Hetherington v. Hixon*, 46 Ala. 299; *McCrary v. Carrington*, 35 Ala. 700; *Ficklin v. Williams*, 38 Ala. 685; *Railway Co. v. Brewer*, 76 Ala. 141; *Wolffe v. Eberlein*, 74 Ala. 104; *Underwood v. Lovelace*, 61 Ala. 157; *Lyman v. U. S. Bank*, 12 How. 226–43; *Insurance Co. v. Dutcher*, 95 U. S. 269; 1 Wait's Ac. & Defenses, 80, § 13; Burge on Suretyship, 166; Byles on Bills, 234, marg., Sharswood's 2d ed.; 5 How. Miss. 296; 8 Martin, La. 432; 16 La, 474; 1 Florida, 301; 2 H. L. Cases, 43; 36 L. J.

404; 15 W. R. 817; 16 L. T., N. S. 217.  The only consid-
eration to support the new (or paid-up) policies was the
premiums which had been paid on the original policies; and
this was a past (or executed) consideration, which would not
support a new and independent promise.—*Rutledge v.
Townsend*, 38 Ala. 711; *Keenan v. Holloway*, 16 Ala. 53;
*Jackson v. Jackson*, 7 Ala. 793; *Shaw v. Boyd*, 1 S. & P.
85; Byles on Bills, 232, marg., note 1.

2.  On the cross-assignments of error: (*a*) Under the
constitutional and statutory provisions of force in 1870–74,
when the original policies in this case were issued, the
stockholders of a private corporation were liable to its cred-
itors, not for their unpaid subscriptions for stock, but for
the full amount of their stock, whether paid or unpaid;
which liability is declared and created in favor of the creditors
of the corporation, becomes absolute on the practical dissolu-
tion of the corporation, and is enforcible in a court of equity,
for the equal benefit of all the creditors.—Const. Ala. 1868,
art. XIII, §§ 2, 3; Rev. Code of 1867, § 1760; *Smith v.
Huckabee*, 53 Ala. 194; *Spence v. Shapard*, 57 Ala. 600;
*A. & M. Asso. v. Ala. Gold Life Insurance Co.*, 70 Ala.
134; 20 Wall. 520; 92 U. S. 161; 11 Wend. 100; 2 Parsons
on Bills & Notes, 142.  (*b*) The holders of policies were
creditors of the corporation at the time of its dissolution,
though the persons insured were then still living; and the
general assignment made by the corporation, immediately
followed by its ceasing to do business, was a practical dis-
solution.—*Smith v. Huckabee*, 53 Ala. 191; 70 Ala. 120;
*Slee v. Bloom*, 19 Johns. 477; Thompson on Liability of
Stockholders, sec. 267; *People v. Security Life Insurance
Co.*, 78 N. Y. 125; *United States v. Bank*, 6 Peters, 36;
*Gannard v. Eslava*, 20 Ala. 737–8, and briefs of counsel;
*Bibb v. Freeman*, 59 Ala. 615; *Anderson v. Anderson*,
64 Ala. 405; *Ward v. Fearn*, 65 Ala. 38.  (*c*) The repeal
of these constitutional and statutory provisions, after the
issue of complainants' several policies, and while they were
still of force, could not impair or affect their validity or obli-
gation.—*Hawthorne v. Calef*, 2 Wall. 22; 99 Penn. St. 505;
Cook on Stockholders, 208, and cases cited in note 2; Cooley's
Const. Lim. 292; *Dane v. Young*, 61 Ala. 160.  (*d*) The
defendants can not be heard to deny the regular organization
of the corporation, or to assail the constitutionality or va-
lidity of the law under which it was organized.  They have

reaped the full benefit of its contracts, and can not now repudiate their obligations.

OVERALL & BESTOR, and F. G. BROMBERG, *contra*, also submitted printed arguments, citing the following authorities to sustain the propositions stated: (1.) The defendant corporation never had a legal existence, the law under which it was organized being violative of constitutional provisions, and therefore void.—41 Ala. 1. The policy-holders dealt with the corporation, and not with the stockholders personally; and no personal liability can be enforced against the stockholders, founded on the contracts of a supposed corporation which never existed.—2 Morawetz Corp., § 748; *Fay v. Noble*, 7 Cush. Mass. 192. (2.) If the corporation was legally organized, or ever had a corporate existence at all; still, the bill seeks to enforce a liability which is purely statutory; and a right or claim created by statute, may be taken away by a subsequent statute, and falls with the repeal of the statute which created it.—*Watson v. Simpson*, 5 Ala. 232; 9 Ala. 713; 22 Ala. 822; 32 Ala. 713; 35 Ala. 280; *Pollard v. Bailey*, 20 Wall. 526; Wood on Stock, &c., § 214. The statute is to be strictly construed, and is not to be extended by construction. (3.) The policy-holders are not creditors of the corporation at the time of its dissolution, when the persons insured are still in life.—88 N. Y. 424; 82 N. Y. 172; 49 Maine, 527; *Bond v. Appleton*, 8 Mass. 472; *Garrison v. Howe*, 17 N. Y. 465; *Castleman v. Holmes*, 4 J. J. Mar. 1; 37 Ohio St. 29; 2 Hill, N. Y. 220; 25 Barb. 232; 37 Cal. 524; *Bowen v. Slocum*, 17 Wisc. 181. (4.) If creditors at all, they are only simple-contract creditors, and have no standing in a court of equity, not having exhausted their legal remedies.—*Smith v. Railroad Co.*, 99 U. S. 398; *Estes v. Miller*, 67 N. Y. 264; *Adele v. Bigler*, 81 N. Y. 349; 62 Ala. 34; *Evans v. Welch*, 63 Ala. 250; Thomp. Stockholders, 399–462; 120 U. S. 747; 101 U. S. 688; 46 N. Y. 120; 65 Ill. 298. (5.) The personal liability of stockholders, under these constitutional and statutory provisions, since abrogated on grounds of public policy, never extended beyond the unpaid balance due on their stock; and all the decided cases involved only unpaid subscriptions.—53 Ala. 191; 70 Ala. 120; *Slee v. Bloom*, 20 Johns. 683, and 19 Johns. 456; 30 Ill. 413. (6.) The paid-up policies are new contracts, based on the surrender and extinguishment of the original policies, con-

taining new stipulations, and conferring new rights; and the rights and liabilities of the parties under these new policies are to be determined by the laws which were of force when they were issued.—49 Maine, 527; 4 J. J. Mar. 1; 37 Ohio St. 26.

SOMERVILLE, J.—The bill is filed by certain policy-holders against the defendant corporation, which is an insolvent life-insurance company, and against co-defendant stockholders owning shares in the company on October 8th, 1886, the date of its dissolution, as manifested by the making, on that day, of a general assignment for the benefit of creditors. The complainants claim to be creditors of the company *in præsenti*, and seek to subject the stockholders to a personal liability, in sums respectively equal to the amounts of their stock, and additional to such stock, under the provisions of the constitution and laws of Alabama which were of force at the time the company was organized, in the year 1868.

It is claimed that this personal or individual liability arises severally under the Constitution of 1868, and under the Code of 1867. The provisions of that constitution, relied on as applicable, are sections 2 and 3 of Article XIII, which read as follows:

"§ 2. *Dues* from corporations shall be secured by such *individual liabilities* of the corporators, or other means, as may be prescribed by law."

"§ 3. Each stockholder in any corporation *shall be liable* to the *amount of his stock* held or owned by him."

Section 1760 of the Revised Code of 1867, identical in language with section 1478 of the Code of 1852, is in the following words: "The stockholders of any such corporation are liable for all *debts due* by it, at the time of its dissolution, *to the extent of their stock*." This section is made applicable to life-insurance companies, by the act approved August 6th, 1868 (Acts 1868, p. 16), which purports to amend section 1755 of the Code of 1867, provided such amendatory act be sustained as constitutional.

The errors and cross-errors assigned are based on the rulings of the chancellor on the demurrers to the bill, all of which were overruled, except those making objection to the paid-up policy of Mrs. McDonnell, as one not imposing any personal liability on the stockholders. This *paid-up* policy was issued *after* December 5th, 1875, when the present constitu-

[McDonnell v. Alabama Gold Life Insurance Co.]

tion went into effect, with its accompanying provision, that "in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her." Const. 1875, Art. XIV, § 8; Code, 1876, § 2023. Her *original* policy was, however, issued on February 23d, 1870, while the Constitution of 1868 and section 1760 of the Code of 1867 were in force.

We proceed to consider *seriatim* the various objections to the equity of the bill, as suggested in the demurrers, and presented on argument.

1. It is first urged by counsel, that neither the phrase, "shall be liable *to the amount of stock* held or owned by him", as used in the Constitution of 1868, nor that used in the Code of 1867 (§ 1760)—liable "to the *extent* of their stock"—can be properly construed to mean liable for such amount *additional* to, or over and above their stock; but that these phrases mean nothing more than that stockholders of corporations shall be personally liable to creditors for unpaid subscriptions of stock. It is enough to say, that this contention is settled against the cross-appellants by the decisions of this court, which hold that these laws were intentionally framed for the express purpose of imposing a personal or individual liability on corporate stockholders, not only to the extent of their unpaid stock, but for an *additional* sum equal to the amount of such stock, enforceable by a bill in equity for the equal benefit of the creditors, on the dissolution of the corporation.—*Smith v. Huckabee*, 53 Ala. 191; *Spence v. Shapard*, 57 Ala. 598; *Cen. Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120. Laws having in view a like purpose, of securing the public against extravagant speculations and incautious enterprises on the part of bodies corporate, have long prevailed in this State, and in many other States of the Union. The language of these foreign statutes is, in many cases, quite similar to our own, and a like construction has been placed upon them by the highest courts of the several States enacting them.—*Briggs v. Penniman*, 8 Cow. 387; s. c., 18 Amer. Dec. 454; *Hawthorne v. Calef*, 2 Wall. 10; Cook on Stock and Stockholders, § 215, note 2; *Terry v. Tubman*, 92 U. S. 156.

2. It is expressly provided, in some of these statutes, that the personal liability of stockholders for this additional amount shall arise only after recovery by the creditor of a judgment against the corporation, and an exhaustion of his

legal remedy by a return of no property found.  The remedy, in other words, is there conferred only on judgment creditors, after exhausting the corporate assets.  It is manifest that, under neither the provisions of the Constitution, nor those of the statute under consideration, is any such limitation established; and not being so restricted, the remedy must be construed as being conferred on all creditors, including those who have no lien, or whose claims are evidenced by simple contract.  The assignment of demurrer based on this ground was properly overruled.—*Spence v. Shapard*, 57 Ala. 598; *Cen. A. & M. Assso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120.

3.  It is further contended, that the claims of policy-holders *in life*, like those of the complainants, do not come within the class of demands intended to be secured by this additional liability—that they are not "dues" from the corporation within the meaning of the Constitution of 1868, nor "debts due" by it within the intention of the statute; and that for this reason the bill is wanting in equity.  Laws of this peculiar kind have been held by some courts to be remedial, and, therefore, to be liberally construed.  By others they have been construed strictly, as in derogation of the common law.  The true principle sustained by the sounder reason, in our judgment, is, that they should be construed neither liberally nor strictly, *but reasonably* so as to carry out the clear purpose and policy for which they are enacted. Thompson on Liability of Stockh., sec. 53; *Freeland v. McCullough*, 43 Amer. Dec., NOTE on pp. 696–7.  It is accordingly the opinion of the court, that the claims of the complainants, growing out the insolvency of the defendant, and the repudiation of its duty to carry the policies by a discontinuance of its business, are debts due *in præsenti* upon the dissolution of the corporation, and, as such, fall within the intention of the law.  There is, in this case, a manifest and total breach of contract by the company, in its failure to carry on the business of life-insurance.  This breach has resulted in damage to all persons holding policies, for which an immediate action will lie.  These damages, moreover, are liquidated, being capable of the most accurate and certain mathematical ascertainment.  The legal measure of such damages is the surrender or equitable value of the policy, calculated on the basis of the "American Tables of Mortality," which are now the orthodox standard throughout the United States and Canada, and of which judicial notice will be taken by the courts.  The data of age, premiums paid, and the

[McDonnell v. Alabama Gold Life Insurance Co.]

date of the policy, being given, this value becomes certain and fixed; and, we repeat, the policy-holder becomes a creditor of the company, with the right to sue for such value, *instanter* upon its dissolution.—*People v. Security Life Ins. Co.*, 78 N. Y. 114; s. c., 34 Amer. Rep. 522; *New York Life Ins. Co. v. Statham*, 93 U. S. 24; *McCall v. Phœnix Mut. Life Ins. Co.*, 9 W. Va. 237; s. c., 27 Amer. Rep. 558; *Day v. Conn. General Ins. Co.*, 45 Conn. 480; s. c., 29 Amer. Rep. 813; *Gordon v. Tweedy*, 74 Ala. 232; s. c., 49 Amer. Rep. 813. And the claim is none the less a "debt due," within the purpose and intent of the law, because it was, at the time the policy was taken out, payable on a future contingency. It was nevertheless *debitum in præsenti, solvendum in futoro*, having in its composition no element of *tort.*—*United States v. State Bank of North Carolina*, 6 Peters, 36; *Fearn v. Ward*, 65 Ala. 33; *Cable v. McCune*, 26 Mo. 371; s. c., 72 Amer. Dec. 214; *Carver v. Braintree Manufacturing Co.*, 2 Story, 432.

4. The pivotal period fixed by the statute for the accrual of this personal liability is for those debts due at the time of the *dissolution* of the corporation.—Code, 1867, § 1760. That the defendant corporation was dissolved, within the meaning of this statute, by the assignment made by it for the benefit of creditors in October, 1886, and by its entire cessation of business, there can be no doubt. A practical, and not a judicially adjudged dissolution, is what the statute contemplates. This is evidenced by insolvency, and the turning of the corporate assets over to a trustee for distribution among creditors, followed by a complete abandonment of the business for which the company was organized. The authorities, both in this and other States, are so full on this point as to render any lengthy discussion of it unnecessary.—*Cent. Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120; *Slee v. Bloom*, 19 John. 456; s. c., 10 Amer. Dec. 273; *Briggs v. Penniman*, 8 Cow. 387; s. c., 18 Amer. Dec. 455; Thomson on Liability of Stockholders, § 267.

5. The claims in suit not having become due until the dissolution of the corporation, on October 8th, 1886, no right of action accrued thereon until that day against the stockholders of the company. The bill having been filed October 15th, 1886—only seven days thereafter—it is palpable that the suit is unaffected by the statute of limitations, either of six years, or of any other period.

6. It is suggested that the defendant corporation, the

[McDonnell v. Alabama Gold Life Insurance Co.]

Alabama Gold Life Insurance Company, was never legally organized, there being no law, general or special, which authorized the organization of *life-insurance* companies in 1868. This contention is based on the idea, that the act approved August 6th, 1868, amendatory of section 1755 of the Revised Code of 1867—which adds life-insurance companies to the list of corporations authorized to be formed under the general law—is void for repugnancy to section 2 of Article IV of the Constitution of 1868, then in force, which provided, that "no law shall be revised, or amended, unless the new act contain the entire act revised, or the section or sections amended." The case of the *Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 1, is cited in support of this view. Whatever merit there may be in this contention, a sufficient answer to it is found in the fact, that the defendants, who seek to raise this objection, are estopped from setting up the illegality or irregularity of their corporate organization. They are stockholders in the company, and have undertaken to organize and hold themselves out to the public as such, and as a lawful body corporate. They have obtained credit, and issued policies on the faith of this representation, whereby they have solemnly affirmed the validity of the law under which they organized, and consequently the legality of the organization. This was an admission of the constitutionality of the amendment now assailed as void; and this admission can not now be retracted, to the prejudice of those who have accepted policies upon the faith of its affirmed validity. To repeat in brief: All stockholders, situated as are the defendants in this case, must be held estopped to deny the constitutionality of the law under which they organized, and for eighteen years uninterruptedly carried on their business as a *de facto* corporation.—*McCarthy v. Lavashe,* 89 Ill. 270; s. c., 31 Amer. Rep. 83; *Cent. Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.,* 70 Ala. 121; *Dows v. Naper,* 91 Ill. 44; *Freeland v. Penn. Cent. Ins. Co.* 94 Pa. St. 504; 2 Morawetz on Private Corp. (2d Ed.) § 760.

7. It is further argued, that the personal liability of stockholders, as imposed by the statute, under the Constitution of 1868, was given by law, and that it could be taken away by law—that is, by the repeal of the law giving it. This repeal was effected on December 5th, 1875, when the Constitution of 1875 went into effect, section 8 of Article XIV of that instrument declaring, that "in no case shall any

stockholder be liable otherwise than for the unpaid stock owned by him or her." Section 2023 of the Code of 1876, enacted to carry this clause into effect from abundant caution, provided that, while stockholders shall be individually liable to the creditors of corporations for unpaid stock, "no such stockholder shall be otherwise individually liable for any dues or debts owing by such corporation, incurred or contracted after the fifth day of December, A. D. 1875." Code, 1876, § 2023. The question arises, does this repeal retroact upon contracts of insurance made under the old law, so as to destroy the individual liability of stockholders as to such contracts. We might dispose of this point without any discussion, on the authority of *Hawthorne v. Calef*, 2 Wall. 10, where the precise question arose, and was expressly decided in the negative, by the Supreme Court of the United States. That case was this: The charter of a corporation in the State of Maine, granted in the year 1836, provided that the property of the individual corporators should, under certain restrictions, be liable for the debts of the corporation "to the amount of their stock." A few months *after* the debt then in suit had been contracted by the corporation, the legislature of Maine passed a statute repealing this individual liability clause of the charter. It was argued there, as here, that the liability was created by statute, and could therefore be taken away by statute. This view was entirely repudiated by the court. It was held, on the contrary, that the liability was contractual, not purely statutory, that it arose *by contract* under the provisions of the law as contained in the company's charter. It was accordingly held to be protected, as a contract, by the clause of the Federal Constitution ordaining that "no State shall pass any law impairing the obligation of contracts."

This is a Federal question; and this decision, involving as it does a judicial construction of an important clause in the Constitution of the United States, is conclusive on the State Courts.—*State v. Agee*, 83 Ala. 110. But, independently of this consideration, the conclusion attained in that case is everywhere supported by the great current of judicial authority. The doctrine accordingly is generally asserted, that, where a statute imposes upon stockholders an individual liability for corporate debts, whether to a limited or unlimited extent, this liability enters into the contract of subscription by each stockholder, and forms a part of the security of the creditors of the corporation when the debts

are contracted, as fully as if it had been incorporated in the contract, and had been signed by the several subscribers for, or transferrees of such stock.—*Corning v. McCullough*, 49 Amer. Dec., NOTE, pp. 308-310; *Hodgson v. Cheever*, 8 Mo. App. 321; *Lowry v. Inman*, 46 N. Y. 119; *Cent. Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120, *supra; Edwards v. Williamson*, 70 Ala. 145; *Aultman's Appeal*, 98 Penn. St. 505; Cook on Stockholders, § 118, p. 208. The only respectable authority holding the contrary doctrine, which we find, is *Coffin v. Rich*, 45 Me. 507; s. c., 71 Amer. Dec. 559, decided by the Supreme Court of Maine in the year 1858, which was six years prior to the promulgation of *Hawthorne v. Calef*, 2 Wall. 10, in 1864, where a similar decision of the Maine court was pronounced erroneous. The view thus contended for by the cross-appellants manifestly cannot be sustained.

The rulings of the chancellor on the demurrer fully accord with the foregoing principles, and the cross-assignments of error made in this court by the respondents to the bill, based on these rulings, must all be overruled.

8. These principles strictly affect only those policies which were issued prior to December 5th, 1875—the day when the repeal of the individual liability law was effected by the adoption of our present constitution, with its new provision on this subject.

One of the policies sued on—that of Mrs. McDonnell—is a *paid-up* policy issued to her on February 22d, 1882, after our present constitution went into effect. Her *original* policy, of which, the bill alleges, this was a mere continuation, had been issued on February 23d, 1870, while the individual liability clause of the statute was in force. It is sought to distinguish the principles governing this contract, from those governing original policies issued prior to the repeal of the old law. The chancellor, acting on this view, held that the paid-up policy of Mrs. McDonnell was a new contract, made under the influence of a new law, and that it must be governed by the provisions of the Constitution of 1875, and of the Code of 1876. He decides, in effect, that the paid-up policy creates a new debt, "incurred or contracted after the 5th December, 1875", within the meaning of section 2023 of the Code of 1876.

It must be kept in mind, that the first (or original) policy expressly provided for its surrender, and the issue of the second (or paid-up) policy, "for the value acquired" under

[McDonnell v. Alabama Gold Life Insurance Co.]

the first, on certain conditions. Upon the payment of fourteen annual premiums, the assured was entitled to a paid-up policy for the full amount of $10,000, and, upon the payment of any fewer number of premiums, not less than two, to a proportionate sum—that is, to a new paid-up policy, for a sum bearing the same ratio to ten thousand dollars that the number of annual premiums actually paid bears to fourteen—which was considered the equitable or surrender value of the policy. This election of the assured to take a paid-up policy was to be manifested by giving notice of intention to the company within six months after the cessation of the policy in consequence of the non-payment of any annual premium when due. The stipulation, it will be noticed, is, in legal effect, for *a continuation of the contract of insurance*, between the same debtor and creditor, upon the same consideration, and, by necessary implication, upon the same conditions, only for a less sum, viz., for the value of the policy, which was of easy and certain mathematical computation. We can perceive nothing in the terms of the new policy, or the circumstances of its issue and acceptance, which indicates an intention of the parties to make a *new contract* discharging or extinguishing the old one. The policy itself does not constitute the contract. It is merely the written evidence of it. Its surrender, therefore, is not necessarily a surrender of the rights acquired under it. The consideration upon which the first (or original) policy issued, was the representations contained in the application for insurance, and the premiums. There was no other or additional consideration for the second, or paid-up policy. No new condition appears in it in any wise detrimental to the company; nor is the one paper in any sense a higher security than the other. No word or clause is used in the latter policy, indicating any intention to abandon the valuable right, acquired under the first policy, to hold the stockholders individually liable for the payment of the amount due on it upon a corporate dissolution of the company. We have seen above that this right was part and parcel of the contract of insurance, and can not be construed to have been abandoned, except by a new contract, made with a mutual intention to dissolve the former engagement, to which it inhered as if incoporated in it. The *onus* is on the defendants, to show that the taking of the new policy was in discharge of the contract evidenced by the first policy, or that it was a *novation*, the whole question being

one of intention to be established by facts.—*Keel v. Larkin*, 72 Ala. 493; *Lee v. Green*, 83 Ala. 491; *McCrary v. Carrington*, 35 Ala. 700; *Marshall v. Marshall*, 42 Ala. 151. A *novation*, under the rules of the civil law, whence the term has been introduced into the modern nomenclature of our common-law jurisprudence, was a mode of extinguishing one obligation by another—the *substitution*, not of a *new paper* or note, but of a *new obligation*, in lieu of an old one; the effect of which was to pay, dissolve, or otherwise discharge it.—1 Parsons Contr. *217; *Butterfield v. Hartshorn*, 26 Amer. Dec. 741; *Bonnemer v. Negrete*, 35 *Ib.* 217. It is observed by Pothier, in his treatise on Obligations, No. 559, touching this subject: "If, since the debt was contracted, *a new agreement* has taken place between the creditor and debtor, by which a *longer time* of payment has been given, or a *new place* for the payment appointed, or the debtor allowed the liberty of paying to *another person* than the creditor, or even by which the debtor should have bound himself *to pay a larger sum or a lesser one*, to which the creditor was willing to confine his demand; in all these cases, and the like, according to the principle that the novation is not to be presumed, it must be decided that there has been *no novation*, and the parties intended only to modify, diminish, or augment the debt, rather than extinguish it, in order to substitute a new one to it, if they did not explain themselves." It has been accordingly held, under this principle, in the State of Louisiana, where the civil law prevails, that there is not a novation where an agent has taken notes payable to himself for goods sold by him, and afterwards new notes for a longer time, but upon the same consideration, are executed by the purchaser payable to the principal.—*Hobson v. Davison's Syndic*, 8 Martin, 422; s. c., 13 Amer. Dec. 294.

In *Ala. Gold Life Ins. Co. v. Thomas*, 74 Ala. 578, we held, that an indorsement on a policy of insurance, stipulating for a paid-up policy, on certain terms, was to be construed in connection with the original contract, with all its benefits and burdens, and not as a novation disembarrassed from the original conditions. A like rule applies in the present case. We may very easily test the soundness of the contention that a paid-up policy, issued on no new consideration, and in pursuance of an express agreement in the original policy to issue it, is a novation, operating to extinguish the contract evidence by such original policy. As suggested by counsel,

[McDonnell v Alabama Gold Life Insurance Co.]

suppose any one assured, after complying with every stipulation imposed on him by the contract of insurance, had applied to the company to issue a paid-up policy, the application being made in due time and form. Upon the refusal of the company, it is clear that a bill for specific performance would lie, to compel the issue and delivery of the policy. Would this be the making of a new contract, upon any new consideration, or on new conditions? A court of chancery would have no jurisdiction to do this. It could not introduce a new contract, in substitution for, or extinguishment of the old one. It could not dissolve the former one, nor expunge any of its accessories or incidents. It could only compel the carrying out of the contract already agreed on between the parties. And we see nothing in the issue of the present paid-up policy of Mrs. McDonnell, essentially different from the suggested case, so far as concerns the question before us. So, if the whole number of premiums, fourteen in number, had been paid, and the company had voluntarily issued a new policy for the full amount of $10,000, in the words of the old one, we can not see that any intention could be inferred to relinquish the security afforded to the assured by the individual liability of the stockholders, which is an obligation primary and original in its nature, by the mere fact of the intermediate repeal of the statute creating this liability. It is our opinion, that the cancelling of the original policy, and the issue of a paid-up policy in its stead, pursuant to the express agreement to do so, is a mere continuation of the former contract of insurance, unaffected by the new law, as promulgated by the Constitution of 1875, and the Code of 1876. This substitution of one paper for another paper was a change merely in the evidence or the proof of the contract, as modified in accordance with its own original terms. It could not have been intended to release the security afforded to policy-holders by the individual liability of stockholders, on the faith of which, it must be presumed, credit was largely extended to the company.

It follows from these views, that the chancellor erred in sustaining the demurrers of the defendants to the amended bill of the complainant, Mrs. Kate McDonnell, and others suing on paid-up policies of insurance issued since December 5th, 1875; and that he committed no error in overruling the other assignments of demurrer.

The decree will be reversed on the appeal of Mrs. Kate McDonnell and others, and remanded, that a decree may be

rendered in accordance with the foregoing opinion. The appellees will take nothing on their cross-assignments of error, all of which are overruled.