56 So.2d 369

**BUTLER v. WALTON.**

8 Div. 904.

Court of Appeals of Alabama.

Oct. 30, 1951.

Rehearing Denied Dec. 4, 1951.

Potts & Young, Florence, for appellant.

Bradshaw & Barnett and Elbert B. Haltom, all of Florence, for appellee.

322

PRICE, Judge.

Appellant, plaintiff below, sued Rutledge Walton for $850.00, with interest, balance due on purchase price of a tractor, with attachments, sold by plaintiff as landlord to defendant as tenant, and sued out an attachment to enforce his landlord's lien against the tractor, attachments and certain cotton grown on the rented premises in 1949.

Defendant filed plea A, the general issue, and special pleas B, C, and D. Plea D was in recoupment, claiming $125.00 for breach of warranty of the condition of the tractor. B and C were pleas of set off for work and labor done by defendant for plaintiff.

The plaintiff, appearing specially for that purpose, filed motion to strike the special pleas because they were filed on the day set for trial and no copy of said pleas had been served on plaintiff or his attorney of record as required by law. The court entered the following order on the motion: "It appearing that copies of said pleas B, C, and D, were served on the attorney for plaintiff on the day the cause was set for trial and the Court having considered plaintiff's special motion to strike defendant's pleas B, C, & D, it is therefore considered, ordered, and adjudged that said special motion be and the same hereby is overruled." The plaintiff's objection to "being required to ask for a continuance or go to trial," was also overruled.

Appellant's counsel asserts in brief that the court's offer of a continuance was refused.

The plaintiff then demurred to pleas B, C, and D. Demurrer was sustained as to plea C and overruled as to pleas B and D. Defendant then filed plea E. The motion to strike was not filed to plea "E." The original demurrer was filed to plea "E," and an additional demurrer filed to pleas B, D and E, which were overruled.

Plaintiff filed general replications to all of said pleas and special replications to pleas B and E. Defendant's demurrer was overruled as to special replications to plea B and sustained as to special replications to plea E. Plea B was later withdrawn.

The case was submitted to the jury on the complaint, general issue, pleas D and E, and plaintiff's general replications.

A verdict for defendant was returned by the jury.

Motion for a new trial was overruled and plaintiff perfected his appeal to this court.

Appellant sold to appellee a John Deere tractor, with attachments, for the price of $1400.00. $400.00 was paid in cash. $150.00 was to be paid by allowing appellant to use the tractor.

It is admitted that at the time of the sale appellee rented 65 acres of land from appellant for the crop year 1949, and the tractor was used to work the land and that the relation of landlord and tenant existed between the parties.

Appellant contends the balance of $850.00, with interest, on the tractor was to be paid when the cotton was gathered in the fall of 1949.

Appellee insists there was no agreement as to the due date of the balance, and nothing said about interest, and that on August 27th, before the rent was due, appellant and appellee entered into an agreement whereby the amount owing on the tractor was to be applied to the amount due by appellant to appellee for work done on minnow ponds and the balance due on the tractor was paid by abutting his claim against appellant for extra work, against

what he owed appellant, and that appellant was to settle later for the difference.

The evidence was in sharp conflict as to the alleged breach of warranty of the condition of the tractor. Appellee contended the appellant told him it was in good mechanical condition and was in good enough condition to make a crop, the purpose for which appellee was buying it; that he relied upon such warranty and that a visual inspection would not disclose the defects in the tractor.

He introduced testimony to the effect that the tractor was in poor mechanical condition and unfit to make a crop. The parts man and mechanic for the tractor agency testified as to the repairs to the tractor and the reasonableness of the charges for parts and labor, and the job orders for repairs were introduced.

Appellant denied making any guarantee as to the condition of the tractor, but that he told appellee he could get on it and try it, that "I hadn't been looking on the inside to see what was in there."

It is undisputed that about April 1, 1949, a verbal contract was made whereby Dallas Butler was to build 16 minnow ponds for appellant and his brother, Oakley Butler, for the contract price of $1600.00 and that Oakley Butler advanced to Dallas Butler $1400.00 as partial payment on the contract to buy another tractor to use in building the ponds.

There is disagreement as to whether appellee was a partner to the contract in the beginning, but it is admitted he was later brought in as a partner by Dallas Butler.

It is admitted that 17 minnow ponds were built by appellee and Dallas Butler.

It is also undisputed that under the original contract there was to be extra work done and that appellant and Oakley Butler agreed to pay some money above the contract price of $1600.00.

Appellant's contention is that none of the extra work was to be done on the ponds or in the pond area, and that the extra work done consisted of leveling off a place for a sales building; digging a ditch outside the pond area and clearing off bushes between the ponds and creek, and that $46.00 was charged for this work.

Appellee insists that $1200.00 worth of work was done, over and above that contemplated in the original contract, and described the work, the number of hours each tractor was used, and stated the charge was reasonable for the tractors and drivers. He also testified the extra work was pointed out by appellant.

It is admitted that on August 27, 1949, after completion of the ponds, all of the parties involved met at a fish fry at the ponds and that a settlement was had.

The testimony as to the terms of the settlement is in sharp conflict.

Appellee contends that the four parties agreed that Oakley Butler was to pay Dallas Butler for the balance due under the contract for work on the ponds, and that appellant and appellee were to settle for the extra work between themselves and that appellant told appellee to let the amount owing on the tractor go on the extra work and said "I will see you and settle up later."

Appellant denies that he agreed to settle with appellee at a later date. He insists that the balance due under the original contract was $200.00 plus $100.00 for the extra minnow pond, and at the fish fry Oakley Butler said if Dallas would settle with appellee he, Oakley, would give Dallas a check for $300.00 and let the $100.00 due appellant for use of the tractor go in on it. Appellant contends this was accepted by appellee and Dallas as partners and was in full settlement and that he never agreed to pay any sum to appellee.

Appellee testified that in November, 1949, when appellant demanded payment of $850.00 as balance due on tractor, appellee reminded him of the claim for extra work and that appellant stated Oakley Butler had already settled with them.

Appellant contends that on November 10, 1949, appellee applied for a loan at the Lexington bank to pay for the tractor but was turned down and he then refused to execute a note for the balance due, but after he failed to borrow the money he stated to appellant: "I owe you for the tractor and you owe me for the work on the ponds."

On cross examination appellee testified he tried to borrow the money, but that "I told him he owed me more than I owed him."

Appellant assigns as error the action of the court in overruling the special motion to strike pleas B, C, & D.

The Supreme Court, in the case of Stull v. Daniel Machine Company, 207 Ala. 544, 93 So. 583, 585, had under consideration a similar question. In that case Judge Miller observed:

"Demurrers to the complaint were ruled on by the court on the same day the set-off pleas were filed. The filing of the set-off pleas were at that time allowed by the court as a matter of right to the defendant. It was not necessary for the defendant to file these pleas until the court overruled the demurrers to the complaint. Hence the motion to strike these pleas of set-off from the file was properly refused by the court. * * * When two of these pleas of set-off, numbered 5 and 7 were filed, the plaintiff was entitled to legal notice thereof and the right to plead or demur to them within 30 days thereafter, because they were pleas on which the judgment by default may be taken; they each claimed an amount in excess of the amount claimed by plaintiff. * * * The plaintiff did not object to going on with the trial because he had not been served with notice of the filing of the pleas of set-off as required by law and because he had not been allowed the time to plead to them as the law permits. A set-off plea, upon which a judgment by default may be taken, is regarded as a cross-action by defendant against plaintiff; and, when filed, a copy thereof must be issued by the clerk and served by the sheriff upon the plaintiff or his attorney of record in the cause. This gives plaintiff time to secure his witnesses and prepare his defense. * * * This court has held:

" 'A general appearance by a defendant * * * may even dispense with the necessity of the service of all process, the purpose of which is only to bring him into court.' Birmingham [Flooring] Mills v. Wilder & Co., 85 Ala. 593, 5 So. 307.

"The plaintiff waived his right of service of copy of the pleas of set-off and waived the time allowed him to plead after service of the notice, by appearing generally and filing the motions in regard to the pleas, and by demurring to the pleas, and by participating in the trial of the cause on the merits. Ward v. Manly, 113 Ala. 631, headnote 1, 21 So. 307; Goldsmith v. Stetson & Co., 39 Ala. 183, headnote 2; McCaskey & Ratcliff v. Pollock, 82 Ala. 174, 2 So. 674."

In the instant case, the rulings on demurrers to the complaint were made on the same day the pleas of set off and recoupment were filed. The order of the court in overruling the motion shows the pleas were served on plaintiff's attorney on the day of trial. Though the plaintiff limited his appearance in filing the motion to strike, by refusing a continuance and by demurring to the pleas and participating in the trial of the cause on the merits, he waived the time allowed him to plead after service. Stull v. Daniel Machine Co., 207 Ala. 544, 93 So. 583.

Plea D, is as follows: "(D) Comes the Defendant, Rutledge Walton, and claims of the Plaintiff, James T. Butler, due him by recoupment $125.00 damages arising out of the same transaction alleged in plaintiff's complaint, the foundation of this suit, for a breach of warranty in the sale of said John Deere Model B. Tractor, Serial No. 60000, by him to the defendant on to-wit, the 4th day of April, 1949, which said tractor the plaintiff warranted to be in good mechanical condition and fit and proper in every way for defendant making a crop in 1949 on defendant's farm land which defendant clearly explained to plaintiff before said sale was the particular purpose for which said tractor was to be used by defendant when in fact the said John Deere tractor was, at the time of said sale, but unknown to defendant, in poor mechanical condition and unfit for said purpose in that the fan and governor gear was shot, the rear wheel bearings and oil seal were shot, the front wheel bearings were shot, the coil in the magneto had, to-wit, burned out, and other parts and mechanisms were fouled, worn and/or broken, and defendant avers that he was thereby forced to expend large sums of money for parts and skilled labor to re-

pair said tractor and to put it in a fit and proper condition to use it in making a crop for the year 1949; and defendant further avers that all of his said damages were caused as a proximate result of plaintiff's said breach of warranty as described ·aforesaid."

The grounds of demurrer challenging the plea are that conclusions are averred; that the allegations that certain parts of the tractor were "shot" is a conclusion and is invasive of the province of the jury; and the breach of the warranty is not sufficiently alleged. The plea was good against the grounds of demurrer interposed. It states the substance of the warranty and sufficiently described the defective condition of the tractor to put plaintiff on notice of what he was to defend against. Abraham Bros. v. Means, 16 Ala.App. 429, 78 So. 459; Franklin Motor Car Co. v. Ratliff, 207 Ala. 341, 92 So. 449.

Plea E is as follows: "(E) Comes the defendant and without in any way confessing the Plaintiff's claim, as a defense to the action of the Plaintiff, saith that on to-wit, April 2, 1949 the defendant and one Dallas Butler entered into an oral contract with Plaintiff and one Oakley Butler under the terms of which Plaintiff and Dallas Butler agreed for the sum of $1600 to furnish all the labor and machinery necessary to build 16 minnow ponds on certain lands belonging to said Plaintiff and said Oakley Butler, which said land is North east of Bluewater Creek, laying just below the home place of Plaintiff, James T. Butler, off the Mitchell Town Road in Lauderdale County, Alabama; under said agreement Defendant and Dallas Butler were to build said 16 minnow ponds in a very similar way to three minnow ponds which lay adjacent to the homeplace of said Oakley Butler, and defendant avers that all the parties viewed these three said ponds before entering into said agreement; defendant further avers that as a part of said agreement the Defendant and Dallas Butler and the Plaintiff and Oakley Butler understood and expressly agreed that the said payment of said $1600 did not cover extra work which was to be performed as the work progressed on the said 16 ponds, and defendant avers that he and Dallas Butler and Plaintiff and Oakley Butler expressly agreed as a part of said oral contract that the said extra work would be pointed out to Defendant and Dallas Butler by Plaintiff and Oakley Butler as the work progressed, and that the said Defendant and Dallas Butler would be paid a reasonable amount of money for said extra work; defendant further avers that as the said building of said ponds progressed there was much extra work pointed out by said Plaintiff and Oakley Butler and performed by said Defendant and Dallas Butler, to-wit, 79½ hours of work by a small tractor known as a T–9 International and to-wit, 68 hours of work by a big tractor known as a TD–14 International; and Defendant further avers that he and Dallas Butler built 17 ponds for Plaintiff and Oakley Butler under said oral contract, and performed the extra work as described aforesaid, but that Plaintiff and Oakley Butler refused to pay for said extra work; Defendant further avers that on to-wit, August 27, 1949 the Defendant and Dallas Butler and the Plaintiff and Oakley Butler met at said minnow ponds and expressly agreed among the four of them that Oakley Butler would settle with Dallas Butler for the remaining balance due under said oral contract, and that the Plaintiff James T. Butler, would pay Defendant, Rutledge Walton for the said extra work as described aforesaid, but Defendant avers that after the said Plaintiff agreed to pay him for said extra work as aforesaid described that he has wholly refused to do so, and the reasonable value for said extra work is in the sum of $1200, and is still unpaid, and which defendant hereby offers to set off against the demand of Plaintiff, and defendant claims judgment for the excess."

Plaintiff lays great stress in brief that demurrers should have been sustained to this plea, because it failed to allege of what the "extra work" consisted; whether it was to be done on the ponds or was wholly unconnected therewith; or was work that should have been done under the original contract.

326

The plea alleges the "extra work" was to be pointed out by plaintiff and Oakley Butler, and was so pointed out and was performed by defendant and Dallas Butler and consisted of 147½ hours of tractor work. It sufficiently stated the contract as to the "extra work" and alleges wherein it was breached. Lambert v. Jefferson, 251 Ala. 5, 36 So.2d 594, and was capable of being made certain by extrinsic proof. Cassells' Mills v. Strater Bros. Grain Company, 166 Ala. 274, 51 So. 969.

The plaintiff lays greater stress in brief that the demurrers should have been sustained for that by plea "E" defendant, sued upon the individual demand of plaintiff, attempts to set off a claim due to defendant and his partner, Dallas Butler, not a party to the suit, against plaintiff's partnership.

The plea sets out an agreement of settlement between the parties and their respective partners, whereby all four parties involved agreed that James T. Butler would pay Rutledge Walton for the "extra work" and Oakley Butler would settle with Dallas Butler for the balance due under the contract. Defendant contends this agreement, made after the work was performed, was a novation, and the debts between plaintiff and defendant become individual and separate.

In the case of Hopkins v. Jordan, 201 Ala. 184, 77 So. 710, 711, the court held that to establish a novation there must have been "(1) a previous valid obligation; (2) an agreement of all the parties thereto, to the new contract or obligation; (3) an agreement that it was an extinguishment of the old contract or obligation; and (4) that the fact must be that the new contract or obligation was a valid one between the parties thereto."

We are of the opinion the plea sufficiently alleged a novation and was good against the demurrer interposed. The question of whether there was a substitution of a new contract for the original so as to constitute a novation was one of intention to be established by the facts. McDonnell v. Alabama Gold Life Ins. Company, 85 Ala. 401, 5 So. 120; Perry & Walden v. Gallagher, 17 Ala.App. 114, 82 So. 562; occurrence:

American Nat. Bank & Trust Co. v. Powell, 235 Ala. 236, 178 So. 21.

A great deal of testimony was introduced both as to work done in addition to that included in the original contract which was constantly referred to by both parties as "extra work," and on the question of a novation, which testimony was in sharp conflict, and the trial court submitted to the jury, under correct instructions, the issues made by the contention of the respective parties, and gave specific charges B, C, & S, as to appellant's contention. If there was error in overruling the demurrers to plea "E," it was cured on the trial, and a reversal should not be predicated on such ruling. Rules of Practice in Supreme Court, rule 45, Code 1940, Title 7 Appendix; Birmingham Water Works Co. v. Barksdale, 227 Ala. 354, 150 So. 139; Christian Benevolent Burial Ass'n, Inc., v. Huff, 241 Ala. 119, 1 So.2d 390.

Assignments 6, 7, 8 and 9 are predicated on the sustaining of demurrer to plaintiff's replications to plea E. On the trial the plaintiff had the benefit of the matters set up in his replications, by the introduction of evidence, full instructions by the court and special charges given. Actually these replications set up nothing more than the general issue. If there was error in the ruling on demurrer, the plaintiff was not harmed thereby. Union Fertilizer Co. v. Johnson, 150 Ala. 159, 43 So. 752.

Assignments of error 10, 11, 12, 16 and 19 as to overruling of plaintiff's objections on the admission of evidence may be considered together. The record discloses that objection was delayed to each question until after answer was made and came too late. Royal Ins. Co. v. Story, 34 Ala.App. 363, 40 So.2d 719, certiorari denied 252 Ala. 275, 40 So.2d 724; Bradford v. Harris, 251 Ala. 386, 37 So.2d 677; Bond Bros. v. Kay, 223 Ala. 431, 136 So. 817; Huntsville Knitting Mills v. Butner, 200 Ala. 288, 76 So. 54; Atlanta & St. Andrews Bay Railway Co. v. Fowler, 192 Ala. 373, 68 So. 283.

Assignment 13 asserts error in a remark by the court during the progress of the trial. The record discloses the following occurrence:

"Q. How much did Tommie Butler pay you? A. Not any.

"By Mr. Frank V. Potts:

"We object to that. It is illegal, irrelevant and immaterial. They had a contract for Sixteen Hundred Dollars ($1600.00), and the money that was paid to Dallas Butler, a partner in the partnership, was paid by a partner in another partnership, they admit that there was money paid, so we object to any testimony as to how much Tommie Butler had paid him.

"By the Court: According to the pleadings in the case, after the work was completed, they had an agreement about how the balance was to be settled, and if that agreement was made it would make it an individual deal, if it was such, at that time, so I overrule the objection.

"By Mr. Frank V. Potts: We except."

■ It appears that plaintiff's exception was reserved to the overruling of the objection, rather than to the court's statement. No objection was made by plaintiff to the court's remarks and no exception reserved. The court was not requested to instruct the jury to disregard the remarks and no motion was made for a mistrial. No reversible error appears in this regard. Page v. Hawk, 250 Ala. 26, 33 So. 2d 8; Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637.

■ Assignment 14 is predicated on the court's ruling sustaining defendant's objection to a question to defendant, "and later on, you had an agreement with him (Dallas Butler) as to how you and he were going to divide the $1200.00 you were going to get for the extra work, didn't you?"

The question was not limited to time. The issue involved was whether there was a novation. Any agreement between Rutledge Walton and Dallas Butler subsequent to the alleged novation would be immaterial.

Assignment of error 15 is based on the court's ruling in sustaining defendant's objection to the following question propounded to defendant on cross examination:

"You don't tell the court that they agreed that Tommie was to finish paying you all of it?"

The defendant had testified that on August 27th the four parties involved had agreed that Oakley Butler was to pay Dallas Butler and that Tommie Butler and defendant were to settle between themselves.

■ The question was repetition, having already been substantially answered, any error in sustaining the objection was harmless. Harvey v. Bodman, 212 Ala. 503, 103 So. 569; Jackson Lumber Co. v. Butler, 244 Ala. 348, 13 So.2d 294.

■ Assignments 17 and 18 were not insisted upon in argument and are not here treated. Birmingham Electric Co. v. Walden, 33 Ala.App. 211, 31 So.2d 762; Rules of Practice in Supreme Court, rule 10, Code 1940, Title 7 Appendix.

■ Assignment of error 20 is based on the court's action in giving charge 2 at the request of defendant. If there is any criticism of this charge, it could have been cured by requesting an explanatory charge. Evans v. State, 17 Ala.App. 141, 82 So. 625; Mobile Light & R. Co. v. Nicholas, 232 Ala. 213, 167 So. 298.

■ The evidence in the case presented a jury question and the court properly refused the general affirmative charge.

■ Charge 9, refused to plaintiff, was fully covered by the oral charge and charges given for plaintiff.

■ Charge 10 was abstract and was properly refused.

■ Charges A, D and X were fully covered by the oral charge. Moreover, charges A and D refer to plea B, which had been withdrawn.

■ The jury returned two verdicts, one for plaintiff for $850.00 and one for defendant on his plea "E" of set off, in the amount of $850.00. The jury explained to the court that by these verdicts they were attempting to abut accounts between the parties.

The court thereupon instructed the jury in the event they should find the parties owed each other equal amounts, the form of the verdict should be "We, the jury, find for the defendant." The jury with-

drew and later returned a verdict for defendant.

The action of the trial court was proper in this respect.

The statute provides in such cases that if the demand of the defendant equals the claim of the plaintiff, judgment must be returned for defendant. Title 7, Sec. 357, Code 1940.

■ The settled rule is that "When the verdict of a jury is not in proper form, the court may, before they are discharged, give them proper instructions and have them reconsider the matter and return a verdict, in due form." City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276, 281, and authorities cited; Johnson v. Louisville & N. R. Co., 240 Ala. 219, 198 So. 350.

■■ The evidence was in sharp conflict, and after allowing all reasonable presumptions in favor of the ruling of the trial court on the motion for a new trial, we cannot say the preponderance of the evidence against the verdict is so decided as to convince us that it was wrong, and unjust, and the finding below will not be disturbed. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738; Washington v. Alabama Mills, Inc., 241 Ala. 327, 2 So.2d 770; Bell v. Nichols, 245 Ala. 274, 16 So.2d 799; Davis v. Radney, 251 Ala. 629, 38 So.2d 867; Ray v. Richardson, 250 Ala. 705, 36 So.2d 89.

The judgment is affirmed.

Affirmed.

## On Rehearing.

In his application for rehearing the appellant requests that we set out "all the pertinent facts with reference to Plea 'E,' particularly those bearing on the question of a novation, and the amount and value of the 'extra' work done by appellee and his partner on the Minnow Ponds. The facts are stated on pages 6 to 15 and pages 51 to 61 of appellant's original brief."

A reference to appellant's original brief discloses that pages 51 to 61 are a restatement by way of argument of the facts set out on pages 6 to 15.

In deference to counsel's request, and in order to insure a full and complete review by the Supreme Court, we set out herein the facts requested:

Appellant contends that Oakley Butler told Dallas Butler when he was showing him over the pond area that there wouldn't be more than 18 ponds and he thought would be just 16; that Dallas asked $2200.-00 for the job, but later agreed to take it for $1600.00, appellant denies this price was conditional on the work being done while it was dry; that Dallas Butler said a better job could be done when dry and he was told to work when he wanted to; and was never told to work while wet; that Dallas Butler said if he could be advanced enough money to buy another tractor they could work in the wet. Appellee testified that it took twice as much time to build the ponds working while wet as if it had been dry, but admits he never told appellant or Oakley Butler either before or after work was done that they would have to pay twice the original contract price.

In addition to the extra work done according to appellant, set out in the original opinion for which $46.00 was charged, appellee claims extra compensation for cutting down a hill in the pond area, so the dirt could be used to fill up a low place so they could work while wet; for building banks around ponds higher and wider than contemplated in original contract. Cutting extra drainage ditch from pump house to creek, levelling bottom of pond, one extra pond, all of which appellee claims was done at request of appellant or his partner. But that appellee testified it was after he finished cleaning off place for building appellant said "you keep up with the extra work you do here and when it is over we will have a settlement of it." And Dallas Butler testified "they said there would be a good deal of grading to do," and "they said there would be extra work around there to do."

No plans or specifications were drawn for the construction of the ponds. Appellant contends the banks around all ponds were to be 8 feet wide at top in order to drive around to pick up minnows.

Appellee testified that extra work was done in putting extra height on the banks,

that one had to be higher to take care of water and all had to be fixed the same height, but he never figured how much higher they were built.

Oakley Butler's version was that they got too much dirt around the sales building and the foreman for appellee and Dallas Butler suggested building the bank higher.

Appellee claims it took 4 or 5 hours with each tractor to dress the bottom of the ponds. Under original contract appellant was to do this work with the John Deere tractor.

Appellant admits he was to disc the pond bottoms with this tractor to make them hold water, but the ponds held water without discing and nothing was done to the bottoms by appellee or appellant.

It is admitted that cutting down the hill was not contemplated in original contract. The ponds and drainage ditches were to be built around the hill.

Appellant contends Tommie Walton, foreman for appellee, suggested cutting down the hill, which Tommie Walton admitted on cross examination, and appellant told him to go ahead if he wanted to, but that was their job, and that the hill was cut down for the benefit of the contractors so they would have a dry place to pull out on.

Dallas Butler testified he never told appellant he would charge for building the pond banks 8 feet wide or building extra roadways. Appellant contends that neither appellee nor Dallas Butler ever stated they were claiming for extra work, except that done outside the pond area amounting to $46.00, until at the fish fry, and that no records were shown as to what the extra work consisted of.

Dallas Butler testified that at the fish fry at which all four persons interested were present, the extra work was discussed and when Oakley Butler gave him the check for $300.00, Dallas said "I think you owe us at least $1,000.00 more, and they never did agree to pay it," and Oakley said "Tommie Butler and Rutledge could settle for the rest of it," and Tommie spoke up and said, "We will settle some other time." That appellee's testimony as to the discussion at the fish fry was: "We talked about the extra work, and we told them how much we felt like they owed us," and Oakley said he would pay $100.00 on extra work and said, "you owe Tommie some money too, so you all can settle up," that appellant agreed to this and said "for me to let what I owed on the John Deere go on this." Appellant "just told Dallas I will see you and settle up later." And appellee stated that Oakley Butler "paid us $300.00."

Oakley Butler testified as to additional money for the extra work; in talking to Dallas Butler, "We had talked it over, and had decided that $200.00 would be sufficient to cover it." And Dallas said, "Well, you pay me what you think is right, I will just leave it up to you." And Oakley said "the agreement between me and my brother is this, if you and Rutledge Walton, since he has one-half interest in it, because they were partners, if he would settle with Rutledge, that I would give him the check for $200.00 and $100.00 for the extra pond, and let the $100.00 that was due my brother on the farm tractor go in on it." That Oakley Butler called appellee down there and told him what was said, and Rutledge said "Tommie Butler could use the tractor as agreed in the sale of the tractor, but Tommie said he didn't need the tractor, and for appellee to agree with Dallas on it and let the extra go in on the work that was done extra." Appellant testified Oakley Butler told Dallas and Rutledge, "We still owed them $200.00 on the original contract and approximately $46.00 for the extra work, so Oakley told Dallas that he and I had agreed to give them $100.00 extra in money and approximately $100.00 extra in work that I was to get with the farm tractor," and that they accepted this settlement.

Appellee testified he did not go to see appellant after August 27th. On November 2nd appellant demanded the balance on the tractor. Appellee doesn't remember whether he mentioned the extra work at that time, but he told appellant at Lexington, Alabama, on November 10th that he owed more on the ponds than he did on the

tractor. Appellant testified appellee told him he was going into the bank to borrow the money to pay for the tractor, and when he came out of the bank he told him he could not borrow the money and refused to give appellant a note, that he would pay appellant $750.00 but he didn't feel like he owed for the unused work of the tractor. It was after appellant asked for a note that appellee said, "the tractor deal was like it was about the ponds, I owe you for the tractor and you owe me for the work on the ponds."

Appellant and Oakley Butler testified that all money paid on the ponds, including the last $300.00 was partnership money belonging to Oakley Butler and appellant; and that there had been no dissolution of their partnership as to the debt for the ponds, and there had been no agreement that they would assume individual parts of the debts, and they were still operating as a partnership.

Appellant testified he did not tell Oakley Butler he would be individually responsible for $200.00 nor any other sum; that Oakley Butler agreed to pay $100.00 of his individual funds if appellant would let $100.00 worth of tractor work go on the claim for extra work and appellant agreed; and after that agreement there was no other statement by appellant or Oakley Butler to each other, that from there on out it would be appellant's individual debt.

Appellant contends Dallas Butler said to appellant and Oakley Butler, as they were leaving the fish fry, "You owe me more money whether you ever pay me or not."

Oakley Butler testified that on November 13th, after the attachment, appellee came to his home and said appellant was trying to do all the collecting and none of the paying, and wanted him to pay the full $850.00 and he felt like he only owed $750.00, and he was going to sue for the extra work on the ponds, but he was not going to sue Oakley Butler. That he felt like $1200 00 should have been paid on the balance for the extra work and he hadn't been satisfied at the time of the settlement and appellant still owed him the money. That he was worth approxi-

mately $5000.00 and if it cost all he had he was going to get it, and appellant could have gotten by without paying the $1200.00 if he hadn't tried to sue appellee.

Application overruled.