304 So.2d 221

**CURRY MOTOR COMPANY, a Corporation**

v.

**REBUILT PARTS WAREHOUSE, INC.,**
a Corporation.

Civ. 342.

Court of Civil Appeals of Alabama.

Dec. 4, 1974.

Cloud, Berry, Ables, Blanton & Tatum and James T. Baxter, III, Huntsville, for appellant.

M. U. Griffin, II, William G. Hamm, Jr., Huntsville, for appellee.

BRADLEY, Judge.

Plaintiff, Rebuilt Parts Warehouse, Inc., filed suit against defendant, Curry Motor Company, in the Madison County Circuit Court on an open and stated account. The amount claimed was $8,324.65. Defendant answered by denying the correctness of the account sued for and claimed a credit in the amount of $4,172.41. Defendant also filed a counterclaim seeking an $8,280.45 judgment for breach of contract. Plaintiff denied the allegations of the counterclaim. Trial was had before the court and a jury and there was judgment for plaintiff in the amount of $6,388.00. Defendant's motion for new trial was denied, and this appeal was perfected from the judgment on the merits and the motion for new trial.

The evidence shows that Rebuilt Parts Warehouse, Inc. rebuilds and wholesales rebuilt automobile parts. When a rebuilt part is sold, the purchaser may choose to exchange an old used part and pay only the "exchange" price or pay the exchange price plus the "deposit." The customer may later bring in the old part and get credit for the deposit paid.

According to the testimony this was the relationship that existed between Rebuilt and Curry. Every time Curry received a shipment of rebuilt parts, it would by return shipment send in the old used parts and receive credit for the deposit previously paid.

After having done business for several years, a dispute arose as to the amount of credit that was due the appellant. Curry contended that the credit it had received for returned parts was deficient by $4,172.-41. Curry also says that after the business relationship was terminated, it discovered that it had used parts on hand amounting to $8,280.45 that it wished to return to appellee for credit. Appellee refused to accept the parts on the ground that the parts were not returned within ninety days as required by their agreement.

Appellant says there never was such an agreement, and the record is not clear whether the agreement was an oral agreement or whether the terms were to be governed by a general sales policy that was put into evidence by the appellee. This policy provided, among other things, that the value of the returned used parts for credit would be increased and decreased with no allowance when the value changed according to the market value.

The evidence as set out in the record is in dispute as to whether there was an oral or written agreement concerning the time period within which the used parts were to be returned for credit.

Appellant contended there was no time limit, and appellee maintained that a ninety day return period was in effect as evidenced by its written sales policy furnished to all of its customers. This written policy was a part of the record evidence.

Appellant filed thirteen assignments of error, seven of which were argued in brief. Those not argued are deemed waived. Supreme Court Rule 9. Of the seven assignments argued in brief, four concerned the trial court's refusal to give to the jury certain written requested charges.

In answer to these four assignments of error, appellee says that appellant cannot now raise the propriety of the trial court's refusal of these written requested charges for appellant did not, prior to the retirement of the jury to decide the case, raise objection to the failure of the court to give the requested charges as required by Rule 51, Alabama Rules of Civil Procedure.

Rule 51 provides, in pertinent part, as follows:

" . . . No party may assign as error the giving or failing to give a written instruction, . . . unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. . . . Opportunity shall be given to make the objection out of the hearing of the jury. . . . "

The record discloses that at the conclusion of its oral charge to the jury, the trial judge read to the jury certain written requested charges which, he said, stated correct principles of law. In accordance with the requirements of Rule 51, he did not tell the jury which party requested which given charge.

At the conclusion of the charge to the jury, the trial judge asked the jury to leave the courtroom and, after they had retired, asked both parties if they had anything further to say. There was nothing added by either side and neither side made any objection to the oral or written charges. The jury was recalled and told to retire to consider a verdict in the case.

■ The Advisory Committee on the Civil Rules points out in its comments relating to Rule 51 that prior to the adoption of the Rules of Civil Procedure, Title 7, Section 818, Code of Alabama 1940, as Recompiled 1958 gave automatic exceptions to adverse rulings on requested written charges. The committee considered that Section 818 placed the trial court at a disadvantage when it came time for the court to sift through a stack of written requested charges and make a decision whether to give or refuse each one of the charges. The committee observed that requiring the parties to submit written requested charges to the court prior to counsel's summation to the jury would give the court and the parties an opportunity to examine the requested charges before they were given or refused. Also, Rule 51 requires that copies of the requested charges be served on all other parties so they can make objection thereto at the proper time if they so desire. The rule further requires that objections to written requested charges be heard outside the presence of the jury, and an opportunity for such objections was extended to counsel outside the presence of the jury in the case at bar. Appellant's failure to object to the trial court's refusal to give written requested charges effectively prevents appellant from now assigning as error the refusal of the written requested charges. Rule 51, Alabama Rules of Civil Procedure.

In oral argument to this court counsel for appellant suggested that inasmuch as the Rules of Civil Procedure had been adopted just a few months prior to the trial of this case, appellant should not be penalized for the failure of its counsel to be fully aware of them and their effect.

This court is aware that familiarizing oneself with the new rules requires a lot of time and effort; however, it should also be pointed out that the supreme court adopted the rules on January 3, 1973, to become effective six months later on July 3, 1973. This case was not tried until October 29, 1973. During the six months subsequent to adoption there was mounted a very comprehensive educational effort so that the bench and bar of Alabama would be fully acquainted with the new rules.

The lawyers involved in this case had ten months to become familiar with the new rules prior to the trial of this case. Yet appellant says that because of the recent advent of the rules it was unaware of their requirement in this regard and should not be penalized by its failure to observe them.

■ Should we consider such an argument as being meritorious, how long should the bar be given to acquaint itself sufficiently with the rules so as to be bound by them? The only guideline that we have to follow is the six months get acquainted period given by the supreme court. This period of delay before the rules became effective was given for the very purpose of permitting the bench and bar to become familiar with the rules prior to their being used and enforced. Consequently, we cannot accept appellant's argument as a valid reason why we should not enforce Rule 51, Alabama Rules of Civil Procedure in this case.

In assignment of error two appellant contends that the trial court erred in allowing a question asked of appellee's witness to be answered for that it sought to present to the jury irrelevant, immaterial and prejudicial evidence.

The record reflects the following:

"Q Your relationship with Mr. Curry, would you say it was a pleasant one during those years?

"A Yes, sir, I would say so, we have had a few arguments and things, but primarily over money matters.

"Q What do the arguments consist of?

"A Primarily our big difference was to ask Curry for a check when he was late and trying to get my money in. As

far as our personal relation, there was no hard feelings ever between us.

"Q Did Mr. Curry ever issue you any worthless—

"MR. BERRY: I object, it's immaterial to the issues in this case.

"MR. HAMM: I withdraw the question.

"THE COURT: You mean for the accounts, giving a check that was no good?

"MR. HAMM: Yes, sir.

"THE COURT: I will let him answer.

"A Yes, sir, I have got quite a number of checks from Mr. Curry that were no good, sir.

"THE COURT: On this account?

"A On this account, sir.

"QUESTIONS RESUMED

"BY MR. HAMM:

"Q Were they eventually made good?

"A Yes, sir, they were eventually made good."

Appellant says that the complaint was on an account stated and open account and nothing is said about "worthless checks;" hence the only effect of such testimony would be prejudicial in that it would distract the jury from the main inquiry and inject foreign issues into the controversy, and cites the following from Karr v. State, 106 Ala. 1, 17 So. 328:

"It is a cardinal rule in the law of evidence that facts and circumstances which, if proved, are incapable of affording a just, reasonable inference or presumption in relation to a material fact involved in the issue on which the jury are to pass, are irrelevant and inadmissible. Testimony, to be admissible, must relate to and be connected with the transaction it is intended to elucidate, and the connection with it must not be remote, or a forced, strained, or mere conjectural conclusion. It must have a reasonable tendency to prove or disprove a material fact in issue. . . . "

Appellee answers this argument by saying that appellant objected to the question before it was complete, and that it was withdrawn by counsel for appellee before the court ruled on it. Appellee says at this point there was no question before the court for a ruling. It had been withdrawn.

Appellee says that when the court asked if the worthless checks were given for the accounts, this was a new question by the court and appellant did not object to this question nor did it move that the answer be excluded. Appellee is saying in effect that the incomplete question objected to was withdrawn prior to answer and the question asked by the court and answered by the witness was not objected to nor was there a request that the answer be excluded.

After a careful examination of the record, we are of the opinion that no ruling of the trial court in this regard was preserved for review by this court. However this may be, we are also of the opinion that no prejudicial error resulted to appellant by the answer obtained from the witness, for the same testimony was elicited without objection from another witness for appellee prior to the time this incident occurred. Alabama Casket Company v. Castleberry, 47 Ala.App. 117, 251 So.2d 372.

For the reasons set out above, we find no reversible error in the action of the trial court in this instance.

In its assignment of error three, appellant asserts that the trial court erred in sustaining appellee's objection to the following question propounded to Louis Sweeney, a witness for appellant:

"Q And what was the custom and practice of the plaintiff in this case

when those goods were returned, what would they do, if anything?

"MR. GRIFFIN: We object to what the custom and practice was.

"THE COURT: Sustain the objection. Let him tell what they did.

"Q What, in fact, would the plaintiff do when these parts were returned?

"A They would in turn check them off and send us a credit memo which would appear on our statement at the end of the month.

"Q Did you personally observe from time to time these return[ed] goods being checked by their driver and loaded on their truck?

"A Yes, sir, from time to time I did.

"Q Tell the Jury what system and process was used when you observed it?

"A Their driver and one of our employees, generally the manager of the Parts House, would be present checking stuff off and putting it on their truck and most of the time they had a barrel sitting in their truck that our parts went into."

Appellant contends that evidence of custom and practice was relevant and therefore admissible and cites us to Title 7A, Section 2–208(1), Code of Alabama 1940, as Recompiled 1958, which is as follows:

"Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."

Appellant says the refusal by the trial court to allow it to prove by "custom or practice" what "course of performance"

was accepted or acquiesced in by appellee was reversible error. We disagree.

As we view Section 2–208(1) set out above, it requires that where there have been numerous performances of an agreement by one party within the knowledge of the other party and there has been no objection, the course of this performance would be relevant in arriving at the meaning of the agreement. What better way to prove such performance than to have direct testimony by a witness who has knowledge of the performance. That is what occurred here. The witness had actual knowledge of what was done when parts were delivered and "cores" picked up and returned by appellee, and he testified from his knowledge.

The question asked to which objection was interposed was a two-headed question. After asking for the custom and practice when goods were returned, the witness was asked almost in the same breath, ". . . what would they do, if anything?"

The court permitted the witness to answer as to what was done when the goods were returned and this effectively answered the question. And it complied with the requirements of Section 2–208(1), *supra*.

■ The trial court's refusal to allow the witness to testify as to the "custom and practice" of appellee when goods were returned was not reversible error.

In assignment of error twelve, appellant says the trial court erred when it refused to give further instructions to the jury after a conditional verdict was rendered which was not acceptable to the trial court.

About two hours after the jury retired to arrive at a verdict, it returned the following verdict:

"We, the Jury, find for the Plaintiff against the Defendant and assess its damages at six thousand three hundred

eighty-eight dollars and one cent of which two thousand five hundred dollars is payable by return of rebuildable cores."

The trial court refused to accept the verdict and said:

"I can't take that verdict, Ladies and Gentlemen, that's a verdict with a condition to be performed beyond the trial of this case. I have no assurance that anything will be done. Go back into the Jury Room and reach a verdict."

After the jury retired, appellant's attorney made the following motion:

"[T]he Defendant would like to move and request that the Court give the Jury additional instruction and additional clarification so that they might have a better appreciation and understanding as to the forms of verdict that they are authorized to return in this case. The Defendant feels that by their effort to return the verdict they attempted, which we agree is improper, it appears that they are confused as to the nature and form and we feel they need further instruction as to the award on damages in favor of the Defendant on Defendant's counter-claim or, in the alternative, reduction by way of set-off on the Plaintiff's claim."

The trial court denied the motion.

Appellant asserts in support of this assignment of error that the jury was confused by the court's defective charge and the court should have instructed them further so as to remove this confusion. We are cited to the following cases as being supportive of this contention: Butler v. Walton, 36 Ala.App. 319, 56 So.2d 369, cert. den. 257 Ala. 714, 56 So.2d 379; and Stevens Markets, Inc. v. Markantonatos, Fla.App., 177 So.2d 51, cert. granted and decision of District Court of Appeal quashed, Fla., 189 So.2d 624, on remand 189 So.2d 904 (Fla.App.).

In the *Butler* case the jury returned two verdicts; one for plaintiff in the amount of $850 and one for defendant on his plea of set-off for $850. The court explained to the jury that these were defective verdicts, gave further instructions as to the form of the verdict, and sent them back for the preparation of a proper verdict. The court of appeals said the trial court acted properly in this instance and cited the settled rule:

"When the verdict of a jury is not in proper form, the court may, before they are discharged, give them proper instructions and have them reconsider the matter and return a verdict, in due form." City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276, 281.

It will be noted that the rule provides that, "when the verdict . . . is not in proper form, the court *may*, . . . give them proper instructions . . . ." According to the rule, even where the form of the verdict could be considered improper, it is still discretionary with the court whether to give further instructions.

In Stevens Markets, Inc. v. Markantonatos, *supra*, the supreme court of Florida held that it was proper for a trial court, where it is clearly apparent that the jury has misunderstood the court's instructions, to reinstruct the jury and let them deliberate further prior to returning a verdict.

The supreme court went further and said the district court of appeals erred in affirming the trial court's resubmission of only one of three verdicts involved in the cause.

The courts in the cited cases did not say that the trial court was required to reinstruct the jury prior to a verdict, it merely said the courts acted properly in doing so under the existing circumstances. That is a different situation from the case at bar. In the instant case the trial court determined that further instructions were un-

necessary. Was this error? We think not.

It is probable that the conclusion was made that the oral charge had adequately covered the subject.

If the oral charge did not adequately cover the subject on which further instructions were requested, then the question must be answered as to whether the trial court abused its discretion in not giving explanatory instructions to the jury.

■ We have carefully examined the oral charge and are of the opinion that it clearly and understandably covered the claim of appellee and the defenses interposed by appellant. We cannot say that the trial court abused its discretion in refusing to give explanatory instructions to the jury when the faulty verdict was rendered, and the jury told to return to the jury room, deliberate and bring in a verdict in the proper form.

The appellee has moved this court to strike appellant's brief for its failure to contain a statement of facts as required by Rule 9, Supreme Court Rules, i. e., there is no narrative rendition of each witness' testimony in the statement of facts.

Rule 9 requires the recitation of the testimony of each witness in narrative form where the sufficiency of the evidence to support a judgment is the basis of an assignment of error. Allen v. Axford, 285 Ala. 251, 231 So.2d 122.

■ In the case at bar there was no assignment of error properly presented to this court raising the sufficiency of the evidence to support the judgment. Motion to strike appellant's brief is, therefore, denied.

No reversible error having been argued, this case is affirmed.

Motion to strike brief denied; affirmed.

WRIGHT, P. J., and HOLMES, J., concur.