343 So.2d 495 (1976)
Ada Elizabeth PRUITT
v.
Johnny Len PRUITT et al.
SC 1813.
Supreme Court of Alabama.
December 30, 1976.
Rehearing Denied March 11, 1977.
*496 Donald W. Lang of Bell, Lang, Bell & Fielding, Sylacauga, Alfred W. Goldthwaite, Montgomery, for appellant.
Lister H. Proctor of Proctor & Vaughn, Sylacauga, for appellees.
BEATTY, Justice.
This is an appeal from a verdict of a jury in favor of the contestant of a will. We reverse and remand.
The will in question was executed by the testator, John A. Pruitt, on March 22, 1973 and named his sister, Ada Elizabeth Pruitt, sole beneficiary and executrix. On August 2, 1974 the testator was injured in an accident and died on August 24, 1974. Ada *497 petitioned the Probate Court of Talladega County to probate this will and shortly thereafter this contest was filed by Johnny Len Pruitt (alleged to be the son of the testator), by his next friend, Geneva Pruitt; Geneva Pruitt individually (alleged to be the testator's widow), John Will Saxon, and Otis Burton, Jr. The contest referred to a will of March, 1970 allegedly executed by John A. Pruitt which created a testamentary trust for Johnny Len Pruitt, with Saxon and Burton as trustees. The contesting complaint alleged further that Ada had exercised fraud and undue influence upon John to procure the will of March 22, 1973, and the pretrial order recites these as the issues in controversy.
In response to the complaint of the defendant-contestants, the proponent filed a motion to dismiss on the ground that the court lacked jurisdiction over each of the contestants, and proceeded to attack the standing of each contestant, that is, that Johnny Len Pruitt was not the son of John A. Pruitt, that Geneva Pruitt was never married to John A. Pruitt, that John Will Saxon was removed as trustee of a prior will by "the purported codicil" to that will, and that Otis Burton, Jr. was removed under that codicil because the codicil vitiated the prior will in its entirety. No affidavits, testimony, or other evidence in support of or in opposition to these grounds was tendered, and the motion was overruled. Because the plaintiff-proponent contends that this was error, in that Geneva Butler and John Will Saxon had no direct legal or equitable interest to litigate, we will attend to this issue first.
A motion to dismiss can never be granted unless it appears that the movant would not be entitled to recover under any theory of the case or any applicable state of facts. Willis v. Buchman, 30 Ala.App. 33, 199 So. 886, rev. on other grounds 240 Ala. 386, 199 So. 892, 132 ALR 1179 (1940). Upon consideration of such a motion, the allegations of the complaint are construed in a light most favorable to the complainant, with all doubts and allegations resolved in his favor. Willis v. Buchman, supra. If there was any common question of law or fact which would arise with respect to their rights, the defendant-contestants might be joined in one action. Rule 20, ARCP. Thus, if these contestants had an interest in the question whether the will of March 22, 1973, or the will of March, 1970 and its codicil of May 17, 1971, was valid, they had standing to sue. Of course, one question of fact common to all contestants was whether John A. Pruitt executed the will of March 22, 1973 free from fraud and undue influence as alleged in the complaint. Whether they were interested depends upon whether they qualify as contestants under Tit. 61, § 52, Alabama Code:
A will, . . . may be contested. . . by any person interested therein, or by any person, who, if the testator had died intestate, would have been an heir or distributee of his estate. ...
Under this statute, if a person has a direct legal or equitable interest in the decedent's estate, in privity with the decedent, "whether as heir, purchaser, or beneficiary under another will, which would be destroyed or injuriously affected by the establishment of the contested will," he has standing to contest the will. Allen v. Pugh, 206 Ala. 10, 89 So. 470 (1921); Braasch v. Worthington, 191 Ala. 210, 67 So. 1003 (1915).
Considering the allegations of the contestants' complaint as true, Johnny Len Pruitt (Butler), as a beneficiary under the prior will of March, 1970, had a direct equitable interest which would have been destroyed by the establishment of the contested will. Geneva Pruitt, who was alleged in the complaint to be the widow of John A. Pruitt, would have been entitled to a distributive share of the personal estate had the testator died intestate, Tit. 16, § 10, Alabama Code, and possibly dower. Tit. 34, § 40, Alabama Code. Thus she had a direct legal interest. John Will Saxon, as testamentary trustee under the March, 1970 will, was a "person interested therein" because as trustee he had a direct legal interest in specific property for the benefit of Johnny Len Pruitt, and active duties under that *498 will. Gunter v. Townsend, 202 Ala. 160, 79 So. 644 (1918). Otis Burton, Jr. alternately alleged to have been appointed trustee under a codicil to the will of March, 1970, would have the same interest. Consequently, the trial court correctly overruled the motion to dismiss.
Numerous reversible errors are claimed by the plaintiff-proponent, among them being the assertion that the evidence does not support the verdict of undue influence or fraud on the part of Ada Pruitt. The evidence was voluminous, and while much of it portrayed John Pruitt as having had an affectionate regard to Johnny Len, whom Geneva Butler claimed was John Pruitt's son, that evidence was devoid of any quality establishing fraud or undue influence on the part of Ada Pruitt in procuring the will in question. The evidence concerning her conduct consisted of the following facts:
Ada Pruitt had lived in Washington, D.C. for a number of years where she was employed by the British Embassy, and as a labor organization lobbyist. John called upon her often to use her political connections for the benefit of his friends in Talladega County (just how this was accomplished was not established). She sent him money when he needed it, and paid his taxes several times. She moved to Montgomery in 1970, at a time when John Pruitt's health was bad, fixed a room for him at her house, and attempted to persuade him to leave Sylacauga and live with her. Apparently he never moved from Sylacauga. She kept clothes for him, helped him with his divorce; set up receipt books for his business; gave him $1,326.45 before she moved to Montgomery, and she spent $1,069.00 in his behalf afterward, including his 1973 tax bill, $517.50 for an automobile for him, and $75.00 paid to the lawyer who prepared the will in question and a power of attorney authorizing Ada to act for him in the event he became disabled. This latter sum was paid on April 10, 1973, almost three weeks after the execution of the will and after a request made to her by that lawyer. The sum for the car was paid on March 21, 1974, the day before the will was executed.
The will itself was drawn by Alfred Goldthwaite, a Montgomery lawyer who had represented Ada Pruitt since 1967, and for whom she had distributed political literature in 1972 and 1974. Goldthwaite's secretary had prepared the will approximately three weeks before it was executed. John Pruitt had consulted Goldthwaite in 1972 concerning other transactions, and John and the lawyer had discussed John's will on two occasions approximately thirty days prior to the day on which John executed it.
There was some evidence that John Pruitt consulted a specialist about his poor health in the fall of 1973, and he had experienced some difficulty with his eyesight at an earlier time, but this condition improved in 1971. On March 22, 1973, Ada accompanied John to Mr. Goldthwaite's law office and following an explanation of the will by the lawyer alone with the testator, the will was executed in Mr. Goldthwaite's office, those present at the execution being the testator, the lawyer, and the lawyer's secretary. The original will, and power of attorney executed contemporaneously, were kept in the lawyer's offices.
There was also evidence of statements made to others by both John and Ada in the spring of 1974. John characterized Ada as a very shrewd business woman who wanted everything he had. Ada informed a state trooper on the day of the accident, in August 1974, that she had a power of attorney from John, and told some nurses at the hospital where John had been taken following his accident that she was executor of his will. Ada herself testified that she did not learn of the power of attorney until after the accident, and learned of the will on the day after John's death. She advised John's physician that she wanted John to have no visitors. From the day of the accident to John's death she and Mr. Goldthwaite were in communication by telephone, in his law office, or on trips to Sylacauga. She made the funeral arrangements. Two of the contestant's witnesses to whom John and Ada had made statements both testified to John *499 Pruitt's independence of mind: one stated that John did what he wanted to do, the other that nobody could influence him to do anything he did not want to do. Indeed, Geneva Butler herself testified on cross examination that nobody could influence John Pruitt against his will. There was additional evidence from other witnesses pertaining to John Pruitt's statements concerning his intentions on behalf of Johnny Len and Geneva, and evidence of John Pruitt's prior wills designating other and different beneficiaries than those of 1970 and 1973.
The appellee maintains that his evidence establishes fraud and undue influence on the part of Ada Pruitt in procuring John Pruitt's will in her favor.
Our cases have consistently held that when undue influence is asserted in a will contest, the contestant has the burden, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499 (1948), citing Hyde v. Norris, 250 Ala. 518, 35 So.2d 181 (1948). In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will. Wilson v. Payton, supra; Alexander v. Alexander, 208 Ala. 291, 94 So. 53 (1922).
A confidential relationship may spring from "those multiform positions in life wherein one comes to rely upon and trust another in his important affairs." Raney v. Raney, 216 Ala. 30, 34, 112 So. 313, 316 (1927).
Whether the beneficiary, or one acting for him, was the dominant party in the relationship between the two is usually a question of fact, but in any case there must be some evidence of controlling influence over the testator's purposes by the other. Little v. Sugg, 243 Ala. 196, 8 So.2d 866 (1942); Kilgore v. Atkinson, 227 Ala. 310, 149 So. 808 (1933).
A "favored beneficiary" has been held to be:
[o]ne who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed. [Cook v. Morton, 241 Ala. 188, 1 So.2d 890 (1941).]
These elements of the presumption go far, of course, in proving the principal charge of undue influence which has been defined in Locke v. Sparks, 263 Ala. 137, 140, 81 So.2d 670, 673 (1955):
Undue influence, . . . must be such as, in some measure, destroys the free agency of the testator, and prevents the exercise of that discretion which the law requires a party should possess as essential to a valid testamentary disposition of his property. . . .
And it must be kept in mind that not all influence is undue; any influence resulting from sympathy and affection only is not disfavored. See Abrams v. Abrams, 225 Ala. 622, 144 So. 828 (1932).
Assuming arguendo that her history of assistance to her brother established a confidential relationship between Ada Pruitt and this testator, there is no evidence that she was the dominant party in that relationship, or that she was active, directly or indirectly, in procuring execution of the will. No reasonable inference of such activity can be established from the fact that the same lawyer represented both parties at various times, or from the fact that the lawyer kept John Pruitt's original will in his office. The latter practice is not uncommon. See Hubbard v. Moseley, 261 Ala. 683, 75 So.2d 658 (1954). As we have noted, the contestants themselves produced evidence of the independence of mind of the testator. Moreover, the testimony showed that John Pruitt himself initiated the contact with the drafting lawyer and, though accompanied by his sister on the day the *500 will was executed, he executed it outside her presence after its terms were explained to him. Nothing in those circumstances or others to which we have referred furnish the slightest inference of a dominant influence by Ada over his own intentions, nor was she shown to have engaged in any undue activity in procuring the will, if, indeed, she was active in procuring it at all.
It is not clear, moreover, that Ada Pruitt was a favored beneficiary under the test laid down in our cases. The "equal claim" of others refers not to the laws of descent and distribution, but to the facts of the particular case, Cook v. Morton, supra, and in this case it is not shown that others had an "equal claim" to John's sympathy or benevolence. Geneva Butler's opinion that her son, Johnny Len, also was the son of John Pruitt, was excluded from the evidence. There was evidence of John's interest in the welfare of the boyhe was named as a beneficiary in an earlier will but no evidence that Johnny Len Butler had an "equal claim." John Pruitt had several sisters surviving him, and there was, likewise, no evidence that they had "equal claim" to John's benevolence. But even if those facts had been shown, still Ada was not "shown to have been busy in getting such will executed." Ibid.
Insofar as the claim of fraud is concerned, contestants only pleaded fraud generally, and so we cannot ascertain the nature of the fraud on which their contest was based. It has been held that undue influence is a species of fraud, Shirley v. Ezell, 180 Ala. 352, 60 So. 905 (1913). To the extent that this principle is applicable, our comments on the lack of proof of undue influence apply with equal force to these facts. If the allegation of fraud is taken to mean that John Pruitt was the victim of a deceit practiced upon him by Ada Pruitt, there was a total failure of proof of any such deceit. Cf. Hornaday v. First National Bank of Birmingham, 259 Ala. 26, 65 So.2d 678 (1953).
Because we have concluded that the case must be reversed for the trial court's refusal to direct a verdict for the plaintiff-proponent as requested, we have not addressed ourselves to the other points raised by the plaintiff on appeal.
REVERSED AND REMANDED.
MADDOX, FAULKNER and SHORES, JJ., and SIMMONS, retired Circuit Judge, sitting by designation of the Chief Justice, concur.

ON REHEARING
BEATTY, Justice.
In his petition for rehearing, the contestant argues that the proponent was precluded from raising the propriety of the trial court's refusal to grant the proponent's request for the affirmative charge because she did not object and give grounds for her objection before the jury retired, as required by Rule 51, ARCP.
First of all, we note that a request for an affirmative charge is the substantial equivalent of a motion for a directed verdict, City of Albertville v. United States Fidelity and Guaranty Co., 272 F.2d 594 (5th Cir. 1960), and "[t]echnical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position." United States v. Fenix and Scisson, Inc., 360 F.2d 260 (10th Cir. 1966). Accordingly, the inquiry is whether a motion for a directed verdict is such a requested action or instruction falling within the purview of Rule 51, ARCP. Put in another way, can a specific objection and stated grounds add to an explanation of such a request? We think not. It would be a vain thing indeed to require counsel to explain a request that is self-explanatory. We can apprehend no misunderstanding by a trial judge of the import of such a motion which calls his attention to the absence of any evidence creating an issue of fact. See 9 Wright & Miller, Federal Prac. and Proc., § 2524.
We are not unmindful of cases decided by the Court of Civil Appeals which have applied the generality of Rule 51, I. e., Curry Motor Co. v. Rebuilt Parts Warehouse, Inc., 53 Ala.App. 719, 304 So.2d 221 (1974), and *501 Cavalier Insurance Corporation v. Gann, 57 Ala.App. 519, 329 So.2d 573 (1976). However, neither of those cases discussed the contents of the requested charges, and hence they cannot be considered as in point here.
Notwithstanding the general application of Federal Rule 51 to similar instances, cf. Guest House Motor Inn, Inc. v. Duke, 384 F.2d 927 (5th Cir. 1967), there have been instances also when the point of the requested charge was deemed sufficient to call a party's position to the trial judge's attention, with no "reiterative insistance" being required. Mumma v. Reading Company, 247 F.Supp. 252 (D.C.1965).
The substantive spirit of Rule 51 is accommodated when the requested instruction is sufficiently clear to enable the trial judge to cure an error resulting in his refusal to give a written instruction. Committee Comments, Rule 51, ARCP. We consider the requested charges here to qualify under that principle.
But there is an additional reason, should we have needed one, justifying this position. We are enjoined by Rule 61, ARCP to disregard procedural errors which have not affected substantial rights of the parties. As Chief Justice Traynor has stated:
. . . it is still the responsibility of the appellate court, once it concludes there was error, to determine whether the error affected the judgment. The Riddle of Harmless Error, 1970, 26.
In this case, the contestant cannot insist that the proponent's failure to object to the Court's failure to give the requested charge affected any substantial right of the contestant when the contestant adduced no evidence on the issues of undue influence or fraud to enable the case to go to the jury.
OPINION EXTENDED, APPLICATION FOR REHEARING OVERRULED.
MADDOX, FAULKNER and SHORES, JJ., and SIMMONS, retired Circuit Judge, sitting by designation of the Chief Justice, concur.